**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| NAVIGATORS SPECIALTY INSURANCE COMPANY,<br><br>*Plaintiff*,<br><br>v.<br><br>CITIZENS INSURANCE COMPANY OF AMERICA,<br><br>*Defendant*. | Civil Action No. 22-01866 (MAF) (AME)<br><br>**OPINION and ORDER** |

**Table of Contents**

I.   **Background**
　　A.　**The Facts**
　　B.　**The Lawsuit**
　　C.　**The Motions**
　　D.　**The Court's Approach**
II.  **General Legal Principles**
　　A.　**Summary Judgment**
　　B.　**Applicable Law**
III. **The Duty to Defend**
　　A.　**Lower Court Cases**
　　B.　**A Federal Court Case**
　　C.　**Other Jurisdictions**
　　D.　**The Contract**
IV.  **Other Issues**
V.   **Conclusion**

\*   \*   \*

A worker was hurt on the job, and sued in state court.

In federal court, one insurance company then sued another --- to make the second insurance company provide certain coverage related to the worker's lawsuit.

Both companies now move for summary judgment.

One motion is granted in part, as to the second insurance company's duty to defend, and is otherwise denied. The other motion is denied.

\*   \*   \*

**I.  Background**

    **A.  The Facts**

The facts as relevant for now are as follows.

A construction worker was injured at work. See Plaintiff's Motion for Summary Judgment, Exhibit B ("State Court Complaint") at First Count ¶ 1. He and his wife sued in state court. See id. They sued, among others, the construction worker's employer (a subcontractor), and the company that had hired the worker's employer (a general contractor). See Plaintiff's Statement of Undisputed Material Facts ("Plaintiff's Rule 56 Statement") ¶ 21.

The general contractor asked the subcontractor's insurance company (a) to defend it in the lawsuit, and (b) to indemnify it as to liability from the lawsuit. See id. at ¶¶ 37, 39.

The subcontractor's insurance company said no. See Defendant's Statement of Undisputed Material Facts ("Defendant's Rule 56 Statement") ¶¶ 26, 28.

    **B.  The Lawsuit**

After coverage was denied, the general contractor's insurance company filed this lawsuit.

The lawsuit seeks, among other things, a declaration that the subcontractor's insurance company was required to defend and indemnify the general contractor. See Complaint ¶¶ 24-34.

From here, the insurance company for the general contractor ("the Contractor") is referred to as "the Plaintiff," and the insurance company for the subcontractor ("the Subcontractor") is referred to as "the Defendant."[1]

### C. The Motions

The Defendant moves for summary judgment, arguing it has no duty to defend or indemnify.  See Defendant's Motion for Summary Judgment at 3-7.

The Plaintiff moves, among other things, for a declaration that the Defendant has a duty to defend.  See Plaintiff's Motion for Summary Judgment at 10-18.

The motions are now before the Court.

### D. The Court's Approach

After a brief discussion of the general standards for assessing summary judgment motions, see Part II.A, and of the substantive law that governs here, see Part II.B, the Court analyzes the duty to defend issue.

The Court's conclusion: the Defendant has a duty to defend.  See Part III.

The Court then briefly addresses the other issues in play, and explains why it will not now reach them.  See Part IV.

Accordingly, the Plaintiff's summary judgment motion is granted in part, as to the Defendant's duty to defend, and otherwise denied.  The Defendant's motion is denied.  See Part V.

---

[1] The Plaintiff is Navigators Specialty Insurance Company.  The Defendant is Citizens Insurance Company of America.  The Contractor is AJD Construction Company, Inc.  See Complaint ¶ 15.  The Subcontractor refers to two apparently related entities, Men of Steel Enterprises, LLC and Men of Steel Rebar Fabricators, LLC.  See id. ¶¶ at 13, 18; see also Defendant's Motion for Summary Judgment, Exhibit A ("Insurance Contract") at NAV 000139-40.

## II. General Legal Principles

### A. Summary Judgment

The parties, as noted, have moved for summary judgment.

Such motions should be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Dupree v. Younger, 598 U.S. 729, 737 (2023); Cellco P'ship v. White Deer Twp. Zoning Hearing Bd., 74 F.4th 96, 100 (3d Cir. 2023).

"A factual dispute is material if it might affect the outcome of the suit under the governing law." Canada v. Samuel Grossi & Sons, Inc., 49 F.4th 340, 345 (3d Cir. 2022) (cleaned up); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party[.]" SodexoMAGIC, LLC v. Drexel Univ., 24 F.4th 183, 203-04 (3d Cir. 2022) (cleaned up).

In assessing a summary judgment motion, "a district court may not make credibility determinations or engage in any weighing of the evidence[.]" Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004). Rather, the Court must "view the facts in the light most favorable to the non-moving party and [draw] all reasonable inferences in that party's favor." Canada, 49 F.4th at 345 (cleaned up); accord Tolan v. Cotton, 572 U.S. 650, 660 (2014).

### B. Applicable Law

The parties' briefs assume New Jersey law controls. See Defendant's Motion for Summary Judgment at 5-8; Plaintiff's Motion for Summary Judgment at 10-14, 18-19.

"Where parties' briefs assume that a particular forum's law controls, such implied consent . . . is sufficient to establish choice of law." Marino v. Brighton Gardens of Mountainside, 2023 WL 6366013, at *2 (D.N.J. Sept. 29, 2023) (collecting cases) (cleaned up); see also Dejewski v. Nat'l Beverage Corp., 2024 WL 2744981, at *3 n.10 (D.N.J. May 29, 2024); Lopez v. Corozal Auto Repair Inc., 2024 WL 1930844, at *3 (D.N.J. May 2, 2024); Tryp Hotels Worldwide, Inc. v. Sebastian Hotel, LLC, 2024

4

WL 1327311, at *3 (D.N.J. Mar. 28, 2024); Smith v. CitiMortgage, Inc., 2023 WL 7619155, at *3 (D.N.J. Nov. 13, 2023).

Accordingly, the Court will apply New Jersey law.

### III. The Duty to Defend

As noted, the parties disagree as to whether the Defendant is obligated to defend the Contractor.

To resolve this disagreement, start with the key insurance contract ("the Insurance Contract").

It runs between the Subcontractor and the Defendant,[2] and it indicates that the definition of "insured" includes not only the Subcontractor, who signed the Insurance Contract, but also "[a]ny . . . organization" that the Subcontractor "agreed in a written contract . . . to add [as] an additional insured[.]"[3] Insurance Contract at NAV 000316; see also id. at NAV 000348.

What this adds up to: the Contractor is an "additional insured" under the Insurance Contract.

Why?  Because the Contractor and the Subcontractor entered into "a written contract."  See Plaintiff's Motion for Summary Judgment, Exhibit 1 ("Contractor-Subcontractor Contract") at NAV 006920-71.  And in that "written contract," the Subcontractor agreed to add the Contractor as "an additional insured."  See id. at NAV 006952.

Accordingly, the Contractor counts as an "insured" under the Insurance Contract --- and therefore has certain rights.  These include the right to a defense, to be supplied by the Defendant. See Insurance Contract at NAV 000326 (describing the "duty to defend").

---

[2]  Recall that the Defendant is an insurance company.  See footnote 1.

[3]  An "additional insured" is "[s]omeone who is covered by an insurance policy but who is not the primary insured."  Insured, Black's Law Dictionary (11th ed. 2019).  A "primary insured" is, for these purposes, the entity that signed the insurance contract with the insurer.

5

Can the Contractor call on the Defendant's duty to defend here, in the construction worker's state court lawsuit?

At first glance, the answer would seem to be yes.

Under New Jersey law, to determine whether an insurance company has a duty to defend, a court must "compar[e] the allegations in the complaint with the language of the policy." Voorhees v. Preferred Mut. Ins. Co., 128 N.J. 165, 173 (1992). "To make that determination, the complaint is placed alongside the policy and the test is whether the allegations of that complaint, upon its face, fall within the risk insured against." W9/PHC Real Estate LP v. Farm Family Cas. Ins. Co., 407 N.J. Super. 177, 191 (N.J. Super. Ct. App. Div. 2009). "When the two correspond, the duty to defend arises[.]" Voorhees, 128 N.J. at 173.

Here, the Insurance Contract and the state court complaint "correspond." For an additional insured --- as noted, that includes the Contractor --- the Insurance Contract provides for certain coverage against a suit for "bodily injury." See Insurance Contract at NAV 000326. And that is this case. The state court complaint initiated a damages action against, among others, the Contractor --- and the lawsuit was for "bodily injury" allegedly suffered by the construction worker. See State Court Complaint at First Count ¶¶ 1, 7.[4]

But there is a wrinkle.

---

[4] A note to flesh things out a bit more. The Insurance Contract covers "bodily injury" that (1) was "caused by an 'occurrence' that takes place in the 'coverage territory'"; and (2) "occur[ed] during the policy period." Insurance Contract at NAV 000326. These boxes are checked. The "coverage territory" includes the United States, see id. at NAV 000338, and that is where the accident happened. See State Court Complaint at First Count ¶ 1. As to the "policy period," it ran from April 1, 2017 to April 1, 2018, see Insurance Contract at NAV 000139, and the construction worker was hurt in November of 2017. See State Court Complaint at First Count ¶ 1. Finally, the state court lawsuit describes what is plainly an accident. See id. (alleging the worker "fell on a[n] access roadway on the construction project causing him to sustain severe, debilitating and permanent injuries"). And under the Insurance Contract an accident counts as an "occurrence." See Insurance Contract at NAV 000340.

6

The Insurance Contract only covers the Contractor "with respect to liability for 'bodily injury' . . . caused, in whole or in part by," the "acts or omissions" of the Subcontractor or someone acting on the Subcontractor's behalf.  <u>See</u> Insurance Contract at NAV 000348, NAV 000316.

And the parties disagree about the significance of this provision.

Per the Defendant, the "caused, in whole or in part, by" language means there is a duty to defend only in vicarious liability situations --- when the additional insured (here, the Contractor) is allegedly liable solely on a derivative basis, on account of the alleged conduct of the primary insured (here, the Subcontractor).  <u>See</u> Defendant's Motion for Summary Judgment at 3-6.

Not so, says the Plaintiff.  The Plaintiff argues there is a duty to defend in vicarious liability situations --- but also in direct liability situations, when the additional insured is allegedly liable at least in part based on what it itself did.  <u>See</u> Plaintiff's Motion for Summary Judgment at 11-18.

This disagreement matters here in a practical sense.

In the underlying state court case, the Contractor was sued on a direct basis --- for its own actions and omissions, <u>see</u> State Court Complaint at First Count ¶¶ 2-8, Third Count ¶ 3, not based solely on what the Subcontractor did.

This means that if the Defendant is right, and there is only a duty to defend for vicarious liability --- then there is no duty to defend the Contractor here.

On the flip side, if the Plaintiff is right, and there is a duty to defend in both vicarious and direct liability situations --- then the duty to defend the Contractor applies in this case.[5]

---

[5]  The parties largely agree on what contractual language the Court should focus on.  <u>Compare</u> Plaintiff's Motion for Summary Judgment at 2-3, 10-14 <u>with</u> Defendant's Motion for Summary Judgment at 1, 3-6.  Neither party suggests that the phrase "with respect to liability," in the "Additional Insured Endorsements" part of the Insurance Contract, might mean that the Insurance Contract covers an additional insured "with respect to liability" (the duty to indemnify) but not as to

7

\* \* \*

The parties' disagreement, noted just above, is controlled by New Jersey law. See Part II.B.

And when applying New Jersey law, "the decisions of the [New Jersey] Supreme Court are the authoritative source." Spence v. ESAB Grp., Inc., 623 F.3d 212, 216 (3d Cir. 2010).

But as to the issue in this case --- does the duty to defend apply in both vicarious and direct liability contexts? --- the New Jersey Supreme Court has not issued a "controlling decision." Popa v. Harriet Carter Gifts, Inc., 52 F.4th 121, 125 (3d Cir. 2022).

> Accordingly, this Court must "predict" how the Supreme Court of New Jersey will eventually resolve this issue. See Spence, 623 F.3d at 216. To make this prediction, a range of sources may be consulted. See, e.g., [Nationwide Mut. Ins. Co. v.] Buffetta, 230 F.3d [634,] 637 [(3d Cir. 2000)] (listing sources); McKenna v. Ortho Pharm. Corp., 622 F.2d 657, 662-663 (3d Cir. 1980) (listing more sources); see generally Popa, 52 F.4th at 125.

Schulman v. Zoetis, Inc., 684 F. Supp. 3d 275, 278 (D.N.J. 2023); see also, e.g., Lopez, 2024 WL 1930844, at \*3; Tryp Hotels Worldwide, Inc., 2024 WL 1327311, at \*9.

The Court's prediction: the New Jersey Supreme Court will conclude that under the insurance contract language, the insurer's duty to defend is triggered either by allegations of vicarious liability or by allegations of direct liability.

There are four reasons for this prediction.

### A. Lower Court Cases

First, two New Jersey courts --- one intermediate appellate court and one trial court --- have come to the just-referenced conclusion. See Essex Ins. Co. v. Newark Builders, Inc., 2015

---

other things (like the duty to defend). The Court follows the parties' lead, see, e.g., Wu v. GSX Techedu Inc., 2024 WL 3163219, at \*25 (D.N.J. June 25, 2024), and frames the duty to defend dispute here as they do --- reducing down to a dispute between a vicarious-liability-only interpretation of the Insurance Contract and a vicarious-liability-or-direct-liability reading.

8

WL 2360114, at *1, *5 (N.J. Super. Ct. App. Div. May 19, 2015); Friedland v. First Specialty Ins. Co., 2016 WL 4162282, at *7 (N.J. Super. Ct. Law Div. June 10, 2016).

This matters because lower state court decisions can be a solid data point from which to predict how the highest state court will eventually rule.  See generally In re Energy Future Holdings Corp., 842 F.3d 247, 254 (3d Cir. 2016); Nationwide Mut. Ins. Co. v. Buffetta, 230 F.3d 634, 637 (3d Cir. 2000); see also Lopez, 2024 WL 1930844, at *2.

But a caveat: while the state court decisions matter here, they do not bear a great deal of weight.

That is because there is another relevant New Jersey intermediate appellate court decision --- and it runs the other way.  See Schafer v. Paragano Custom Bldg., Inc., 2010 WL 624108 (N.J. Super. Ct. App. Div. Feb. 24, 2010).

It is one thing to predict where the New Jersey Supreme Court will ultimately land based on New Jersey lower court decisions that suggest a deep consensus as to what the law is.  See, e.g., Howard v. Wells Fargo Bank, N.A., 2024 WL 2044622, at *3 (D.N.J. May 8, 2024) (weighing lower court decisions especially heavily when they "reflect a stable and long-term consensus as to what the state's law is").

But it is quite another thing to lean on a relatively sparse body of cases (only three), that are close to being evenly split (a 2-1 tally, with the tiebreaker coming from a state trial court decision).

Bottom line: lower court decisions supply a basis for predicting how the supreme court will rule --- but here, not a strong one.[6]

---

[6] There was a time when federal diversity courts were expected to follow even a single state court decision, or to go with the barest-majority state court rule.  See, e.g., Henry J. Friendly, In Praise of Erie — And of the New Federal Common Law, 39 N.Y.U. L. Rev. 383, 400-01 (1964) (describing three 1940 Supreme Court decisions --- and criticizing their "excess[es]").  But that is not current law, as a recent Third Circuit case underscores.  See Gov't Emps. Ins. Co. v. Mount Prospect Chiropractic Ctr., P.A., 98 F.4th 463, 468-69 (3d Cir. 2024).  None of this means that an intermediate appellate state court decision is not a lodestar.  It is.  See Robinson v. Jiffy Exec. Limousine Co., 4

B. **A Federal Court Case**

A second stepping-off point for making a prediction: in a recent decision, this Court considered an insurance contract with the same operative language at issue here --- and concluded that the duty to defend is triggered by allegations of either vicarious or direct liability. See Am. Fire & Cas. Co. v. Am. Family Home Ins. Co., 2023 WL 3580836, at *6-8 (D.N.J. May 22, 2023).

This moves the needle to an extent. See generally Schulman, 2023 WL 4539476, at *6 ("In predicting how a matter would be decided under state law we examine federal district court cases interpreting the state law.") (cleaned up); see also Tryp Hotels Worldwide, Inc., 2024 WL 1327311, at *10; Pinkston v. City of Jersey City, 2023 WL 6888265, at *6 (D.N.J. Oct. 18, 2023); cf. MacGregor v. State Mut. Life Assur. Co. of Worcester, Mass., 315 U.S. 280, 281 (1942) ("In the absence of [on-point state court decisions] . . . , we shall leave undisturbed the interpretation placed upon purely local law by a Michigan federal judge of long experience and by three circuit judges whose circuit includes Michigan."); Factors Etc., Inc. v. Pro Arts, Inc., 652 F.2d 278, 281 (2d Cir. 1981) ("[C]onsiderable weight [should be given] to state law rulings made by district judges . . . who possess familiarity with the law of the state in which their district is located[.]").

C. **Other Jurisdictions**

Next, look to federal courts throughout the United States.

The overwhelming majority rule is that the Insurance Contract's "caused, in whole or in part, by" language is consistent with a duty to defend that applies in both direct and vicarious liability contexts. See, e.g., Atlanta Gas Light Co. v. Navigators Ins. Co., 2023 WL 9058615, at *4-5 (S.D. Ind. Sept. 22, 2023) (applying Indiana law); Louisville Galleria, LLC v. Phil. Indemnity Ins. Co., 593 F. Supp. 3d 637, 646-47 (W.D. Ky. 2022) (applying Kentucky law); Triangle Ins. Co. v. Resolute FP US, Inc., 2021 WL 2690512, at *5 (E.D. Tenn. Mar. 29, 2021) (applying Tennessee law); Scottsdale Ins. Co. v. United Rentals

---

F.3d 237, 242 (3d Cir. 1993); City of Philadelphia v. Lead Indus. Ass'n, Inc., 994 F.2d 112, 123 (3d Cir. 1993). But its gravitational pull is cancelled out to an extent where, as here, there is another intermediate appellate decision pulling in the exact opposite direction.

10

(N. Am.), Inc., 977 F.3d 69, 73 (1st Cir. 2020) (applying Massachusetts law); FirstEnergy Generation, LLC v. Valley Force Ins. Co., 487 F. Supp. 3d 630, 635-36 (N.D. Ohio 2020) (applying Ohio law); Com. & Indus. Ins. Co. v. Century Surety Co., 809 Fed. App'x 311, 316 (6th Cir. 2020) (applying Pennsylvania law); Donahue v. Republic Nat'l Distributing Co., LLC, 2019 WL 127056, at *3-4 (E.D. La. Jan. 8, 2019) (applying Louisiana law); Moore v. Home Depot USA, Inc., 352 F. Supp. 3d 640, 647-48 (M.D. La. 2018) (applying Louisiana law); Am. Guar. & Liab. Ins. Co. v. Norfolk S. Ry. Co., 278 F. Supp. 3d 1025, 1042 (E.D. Tenn. 2017) (applying Tennessee law); Cap. City Real Estate, LLC v. Certain Underwriters at Lloyd's London, 788 F.3d 375, 380-81 (4th Cir. 2015) (applying Maryland law); WBI Energy Transmission, Inc. v. Colony Ins. Co., 56 F. Supp. 3d 1194, 1202-03 (D. Mont. 2014) (applying Montana law); First Mercury Ins. Co. v. Shawmut Woodworking & Supply, Inc., 48 F. Supp. 3d 158, 172-73 (D. Conn. 2014) (applying Connecticut law); Thunder Basin Coal Co. v. Zurich Am. Ins. Co., 943 F. Supp. 2d 1010, 1014-15 (E.D. Mo. 2013) (applying Wyoming law); Pro Con, Inc. v. Interstate Fire & Cas. Co., 794 F. Supp. 2d 242, 256-57 (D. Me. 2011) (applying Maine law); Am. Empire Surplus Lines Ins. Co. v. Crum & Forster Specialty Ins. Co., 2006 WL 1441854, at *7 (S.D. Tex. May 23, 2006) (applying Texas law).[7]

This consensus is important as a general matter --- because how other jurisdictions answer a legal question can provide a basis for predicting how another jurisdiction will answer the question. See, e.g., Smith, 2023 WL 7619155, at *6; accord, e.g., In re Energy Future Holdings Corp., 842 F.3d at 254 (looking to "decisions from other jurisdictions that have discussed the issue") (cleaned up); Tryp Hotels Worldwide, Inc., 2024 WL 1327311, at *10.

---

[7] There are cases on the other side of the ledger. But they are a small minority. See P.F. Chang's China Bistro Inc. v. Associated Indus. Ins. Co. Inc., 2022 WL 13947690, at *4 (D. Ariz. Oct. 24, 2022) (applying Florida law); Cincinnati Specialty Underwriters Ins. Co. v. KNS Grp, LLC, 561 F. Supp. 3d 1298, 1315 (S.D. Fla. 2021) (applying Florida law); Waste Mgmt., Inc. v. Great Divide Ins. Co., 381 F. Supp. 3d 673, 690, 693-94 (E.D. Va. 2019) (applying Maryland law); Lincoln General Ins. Co. v. Federal Const., Inc., 2010 WL 4978852, at *2 (N.D. Ill. Dec. 2, 2010) (applying Illinois law).

11

And this consensus is especially important here.

To see why, step back for a moment.

To accurately predict how a state supreme court will rule on an open legal question, a federal court should generally analyze the question using the same interpretative approach that the state supreme court applies in the relevant area of the law. See Pinkston, 2023 WL 6888265, at *6; Schulman, 684 F. Supp. at 279-281, 281 n.5 (collecting cases); Abbe R. Gluck, Intersystemic Statutory Interpretation: Methodology As "Law" and the Erie Doctrine, 120 Yale L.J. 1898, 1929-30 (2011).  After all, the state court will itself apply that interpretative approach to eventually generate its decision.  And by taking that approach now, the federal court increases the likelihood that it will get its prediction right.

To see the point, take some examples.

Consider a case in which the federal court's question is: will the state supreme court apply this law extraterritorially?  In that case, the likelihood of successful prediction is increased if the federal court applies a presumption against extraterritoriality (if that is generally the state's interpretive approach) or does not apply a presumption (if that is the state's general approach).  Conducting its analysis with the presumption will tend to angle the state supreme court toward a different decision than conducting its analysis without the presumption --- and the federal court's charge is to predict what the state supreme court will decide.  See generally Schulman, 684 F. Supp. 3d at 280-81 (discussing the extraterritoriality example).

Take as another example a case that turns on this open question: will the state supreme court extend the scope of statutory immunity?  The federal court will do a better job of predicting state law if it tackles the open question using the same interpretive approach (textual analysis?  policy-focused analysis?) that the state supreme court will itself use.  The reason: the state supreme court's chosen interpretive approach may well inform its ultimate decision.  And because the road the state supreme court opts to take can influence the destination it will reach, the federal court --- aiming to get to that same destination --- should set off at the outset down the same road. See generally Pinkston, 2023 WL 6888265, at *6 (discussing the immunity example).

12

Now come back to this case.

The above discussion matters here because when interpreting a standard-form insurance contract, of the kind that is at issue here, the New Jersey Supreme Court has consistently pursued a particular interpretive approach.

> [W]e . . . look to whether there is a consensus among our sister jurisdictions over the interpretation to be given to the language [of the form insurance contract]. We do that because we assume that, where stock language has been uniformly interpreted in a particular way, sophisticated commercial entities are aware of that interpretation and that it has informed their understanding of the contract provision at issue.

Chubb Custom Ins. Co. v. Prudential Ins. Co. of Am., 195 N.J. 231, 242 (2008); cf. Weedo v. Stone-E-Brick, Inc., 81 N.J. 233, 241 (1979).

Here, a national consensus has indeed developed, as set out above.

And in this area, New Jersey's commitment to a particular interpretive approach --- to going with the consensus --- strongly suggests that the New Jersey Supreme Court will reach the same bottom-line conclusion as its many "sister jurisdictions." Chubb Custom Ins. Co., 195 N.J. at 242.

    D.    **The Contract**

There is a final basis for predicting how the New Jersey Supreme Court will eventually rule.

Per the New Jersey Supreme Court: "[g]enerally, an insurance policy should be interpreted according to its plain and ordinary meaning." Voorhees, 128 N.J. at 175.

This approach weighs in favor of a direct-or-vicarious reading of the Insurance Contract. The Contract extends coverage "to liability for 'bodily injury', . . . caused, in whole or in part by [the named insured's] acts or omissions, or the acts or omissions of those acting on [the named insured's] behalf[.]" Insurance Contract at NAV 000316, NAV 000348. But this does not purport to limit coverage to an "injury" that is "caused" in one particular way or another, direct or vicarious. See Essex Ins. Co., 2015 WL 2360114, at *5 (making this point); Scottsdale Ins.

13

Co., 977 F.3d at 73 (same); Thunder Basin Coal Co., 943 F. Supp. 2d at 1014-15 (same); Am. Empire Surplus Lines Ins. Co., 2006 WL 1441854, at *7 (same).

The insurance contract could have imposed this sort of limit. But it did not, cf. Argonaut Ins. Co. v. Evanston Ins. Co., 2023 WL 4339605, at *6 (N.J. Super. Ct. App. Div. July 5, 2023), and under New Jersey law "when the terms of an insurance contract are clear, it is the function of a court to enforce it as written and not to make a better contract for either of the parties." Cypress Point Condo. Ass'n v. Adria Towers, LLC, 226 N.J. 403, 415 (2016) (cleaned up).

* * *

In sum: based to a limited extent on lower state court decisions and a federal court decision, and to a much greater extent on the national consensus in this area and the plain meaning of the insurance contract, the Court predicts that the New Jersey Supreme Court will hold that the duty to defend here is triggered by allegations of direct liability or by allegations of vicarious liability.

Accordingly, the Defendant has a duty to defend the Contractor and the Plaintiff is entitled to partial summary judgment on that basis.[8]

## IV. Other Issues

The remaining issues raised by the parties' summary judgment motions can be addressed quickly.

First: in addition to making a duty to defend argument, the parties seek summary judgment as to a purported duty to indemnify. See Defendant's Motion for Summary Judgment at 6-7; Plaintiff's Motion for Summary Judgment at 20.

But neither party points to any provision in an insurance contract that is said to require indemnification.

The Defendant does not do so. See Defendant's Motion for Summary Judgment at 6-7.

And for its part, the Plaintiff seems to focus on an indemnification clause in the contract that runs between the

---

[8] The financial implications of this, including as to money already spent, are for another day.

14

Contractor and Subcontractor.  See Plaintiff's Motion for Summary Judgment at 7-8, 20.  But it is hardly clear that the Plaintiff can seek indemnity under a contract it did not sign.  See Aronsohn v. Mandara, 98 N.J. 92, 101 (1984) ("The obligation of contracts is, in general, limited to the parties making them.") (cleaned up).  And the Plaintiff makes no effort to square this circle --- for example, by pressing a third-party beneficiary argument.  See, e.g., N.J. Stat. Ann. 2A:15-2.

Given that the parties have not meaningfully developed their arguments, the Court will deny their summary judgment motions (at least for now) as to the duty to indemnify.  See Maltez v. N.J. Transit Rail Operations, Inc., 2024 WL 3276998, at *4 (D.N.J. July 1, 2024).

And there may be another reason to deny their motions: there is no indication in the record that any judgment has been entered here.  Debates about who will provide indemnity for a judgment therefore may potentially not be ripe.  See Hartford Ins. Co. v. Dana Transp. Inc., 2018 WL 10152321, at *5 (D.N.J. May 18, 2018) ("As a general matter, courts refrain from adjudicating whether an insurer has a duty to indemnify an insured until after the insured is found liable for damages in an underlying action.") (cleaned up).

Second: the parties disagree as to whose insurance would need to be tapped first in the event of an adverse judgment.  See Plaintiff's Motion for Summary Judgment at 18-19; Defendant's Reply Brief at 11.  But the point from just above is the key one --- in the absence of evidence of a judgment, there is likely no ripe issue here as to the order in which various entities may need to foot the bill for any such judgment.  See Excelsior Ins. Co. v. Selective Ins. Co. of Am., 2023 WL 6366274, at *13 (D.N.J. Sept. 29, 2023) (declining to address "excess versus primary" declaration question because the "allocation of responsibility among the insurers for any loss [the additional insured] is deemed liable for [is] a contingency that has not happened, and may never happen"); Cold Spring Granite Co. v. RLI Ins. Co., 2020 WL 948816, at *6 (D.N.J. Feb. 27, 2020) (refusing to address duty to indemnify claim "[b]ecause the Underlying Action remain[ed] pending").

## V.   Conclusion

The Plaintiff's summary judgment motion is granted in part, see Part III, and denied in part, see Part IV. The Defendant's summary judgment motion is denied in its entirety.  See Parts III-IV.

It is on this 3rd day of July 2024 **SO ORDERED.**

　　　　　　　　　　　　　　　　　　　　／s／
　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　Michael E. Farbiarz, U.S.D.J.