**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NOS. A-2753-23
     A-3553-23
     A-3782-23

DONALD J. HOILAND and
MANDY HOILAND, his wife,

  Plaintiffs-Respondents,

v.

AJD CONSTRUCTION CO., INC.,

  Defendant-Appellant,

and

GRAND LHN III, U.R., LLC, GRAND
LHN II URBAN RENEWAL, LLC,
GRAND LHN I URBAN RENEWAL,
LLC, GRAND LHN URBAN
RENEWAL 1, LLC, GRAND LHN,
III, LLC, and P. ESPOSITO
CONSTRUCTION, LLC,

  Defendants,

and

IRONSTATE DEVELOPMENT
COMPANY, IRONSTATE

DEVELOPMENT COMPANY,
LLC, ESPOSITO CONSTRUCTION,
LLC, ESPOSITO INDUSTRIES, LLC,
ESPOSITO GROUP, LLC, AMERICAN
SAFETY PARTNERS, LLC, MEN OF
STEEL ENTERPRISES, LLC, MEN OF
STEEL REBAR FABRICATORS, LLC,
and EMPIRE STATE REBAR
INSTALL, LLC,

      Defendants-Respondents.

_____

DONALD J. HOILAND and
MANDY HOILAND, his wife,

      Plaintiffs-Appellants,

v.

AJD CONSTRUCTION CO., INC.,
GRAND LHN III, U.R., LLC, GRAND
LHN II URBAN RENEWAL, LLC,
GRAND LHN I, URBAN RENEWAL,
LLC, GRAND LHN URBAN
RENEWAL 1, LLC, GRAND LHN, III,
LLC, IRONSTATE DEVELOPMENT
COMPANY, ESPOSITO
CONSTRUCTION, LLC, P. ESPOSITO
CONSTRUCTION, ESPOSITO
INDUSTRIES, LLC, ESPOSITO
GROUP, LLC, IRONSTATE
DEVELOPMENT COMPANY, LLC,
AMERICAN SAFETY PARTNERS,
LLC, MEN OF STEEL ENTERPRISES,
LLC, MEN OF STEEL REBAR
FABRICATORS, LLC, and EMPIRE
STATE REBAR INSTALL, LLC,

2

A-2753-23

Defendants-Respondents.

_____

DONALD J. HOILAND and
MANDY HOILAND, his wife,

     Plaintiffs-Respondents,

v.

AJD CONSTRUCTION CO., INC.,
GRAND LHN III, U.R., LLC, GRAND
LHN II URBAN RENEWAL, LLC,
GRAND LHN I URBAN RENEWAL, LLC,
GRAND LHN URBAN RENEWAL 1, LLC,
GRAND LHN, III, LLC, IRONSTATE
DEVELOPMENT COMPANY, LLC,
P. ESPOSITO CONSTRUCTION, LLC,
ESPOSITO INDUSTRIES, LLC,
ESPOSITO GROUP, LLC, AMERICAN
SAFETY PARTNERS, LLC, and
EMPIRE STATE REBAR INSTALL, LLC,

     Defendants-Respondents,

and

MEN OF STEEL ENTERPRISES, LLC
and MEN OF STEEL REBAR
FABRICATORS, LLC,

     Defendants-Appellants.

_____

Argued (A-2753-23) and Submitted (A-3553-23 and A-3782-23)
January 22, 2026 – Decided February 6, 2026

Before Judges Mawla, Bishop-Thompson, and Puglisi.

3

A-2753-23

On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Docket No. L-2754-19.

Sean E. Harriton argued the cause for AJD Construction Co., Inc., appellant in A-2753-23 and respondent in A-3553-23 and A-3782-23 (Kahana Feld LLP, attorneys; Sofya Uvaydov and Sean E. Harriton, of counsel and on the briefs).

Thomas J. Coffey argued the cause for Men of Steel Enterprises, LLC and Men of Steel Rebar Fabricators, LLC, appellants in A-3782-23 and respondents in A-2753-23 and A-3553-23 (Donnelly Minter & Kelly, LLC, attorneys; Patrick B. Minter, of counsel; David M. Blackwell and Thomas J. Coffey, on the briefs).

Clark Law Firm, PC, attorneys for Donald J. Hoiland and Mandy Hoiland, appellants in A-3553-23 and respondents in A-2753-23 and A-3782-23 (Gerald H. Clark and Lazaro Berenguer, of counsel and on the briefs).

Lewis Brisbois Bisgaard & Smith, LLP, attorneys for respondents Esposito Construction, LLC, Esposito Industries, LLC, and Esposito Group, LLC (Colin P. Hackett and Kirandeep Kaur, of counsel and on the brief).

Marks, O'Neill, O'Brien Doherty & Kelly, PC, attorneys for respondents Grand LHN III, LLC, Ironstate Development Company, and Ironstate Development Company, LLC (Philip J. Degnan and Jordan A. Gerrity, on the brief).

PER CURIAM

4

A-2753-23

These are three back-to-back appeals. The cases involve a fall at a construction site in which a jury found AJD Construction Co., Inc. (AJD), the general contractor, partially liable for plaintiff Donald J. Hoiland's injuries, awarding him and his wife, plaintiff Mandy Hoiland, damages.

In A-3553-23, plaintiffs appeal from summary judgment entered in favor of the owners and developers of the site, defendants Grand LHN III, LLC, Ironstate Development Company, and Ironstate Development Company, LLC (collectively Grand LHN), and subcontractor defendants Esposito Construction, LLC, Esposito Industries, LLC, and Esposito Group, LLC (collectively Esposito). In A-3782-23, another subcontractor, defendants Men of Steel Enterprises, LLC and Men of Steel Rebar Fabricators, LLC (collectively MOS) appeal from the trial court's finding AJD was entitled to contractual indemnification from MOS for its share of the jury award. In A-2753-23, AJD appeals from the trial court's determination it was not entitled to contractual indemnification from MOS for sums it was required to pay to plaintiffs for not accepting plaintiffs' offer of judgment.

For the reasons expressed in this opinion, we affirm in A-3553-23 and A-3782-23. We reverse in A-2753-23.

A-2753-23

Grand LHN owned property in Jersey City, which it intended to redevelop as a high-rise residential building.  It hired AJD to serve as the general contractor on the project.  In pertinent part, the contract between Grand LHN and AJD stated:

> § 3.3  SUPERVISION  AND  CONSTRUCTION PROCEDURES
> § 3.3.1 The Contractor shall supervise and direct the work, using the Contractor's best skill and attention. The Contractor shall be solely responsible for and have control over construction means, methods, techniques, sequences and procedures and for coordinating all portions of the work under the Contract, unless the Contract Documents give other specific instructions concerning these matters.  If the Contract Documents give specific instructions concerning construction means, methods, techniques, sequences or procedures, the Contractor shall evaluate the jobsite safety thereof and, except as stated below, shall be fully and solely responsible for the jobsite safety of such means, methods, techniques, sequences or procedures.
>
> § 3.15 CLEANING UP
> § 3.15.1 The Contractor shall at all times keep the premises and surrounding area free from accumulation of waste materials or rubbish caused by operations under the Contract.  The Contractor shall furnish dumpsters and other trash containers and receptacles as may be appropriate and shall direct Subcontractors in the disposal of refuse and waste materials.  Contractor shall remove and replace dumpsters, trash containers and receptacles as appropriate for the maintenance of clean, orderly work areas. . . .

6

A-2753-23

§ 3.15.2 If the Contractor fails to clean up as provided in the Contract Documents, the Owner may do so and the cost thereof shall be charged to the Contractor.

§ 3.18 INDEMNIFICATION

§ 3.18.1 To the fullest extent permitted by law the Contractor shall indemnify, defend, and hold harmless the Owner . . . from and against claims, damages, losses and expenses, whether direct or indirect, including but not limited to attorneys' fees, arising out of or resulting from performance of the Work or the acts, omissions, negligence or willful misconduct of the Contractor, its Subcontractors . . . and . . . anyone directly or indirectly employed by them . . . , except that the obligation to defend, indemnify and hold harmless the Indemnified Parties under this paragraph shall not extend to any claims, losses and expenses to the extent caused by or resulting from the sole negligence of the Indemnified Parties.  Contractor shall cause its Subcontractors . . . to indemnify, defend and hold harmless the Indemnified Parties as aforesaid with respect to the Subcontractor's . . . negligence, willful misconduct[,] or omissions . . . .

. . . .

§ 5.3 SUBCONTRACTUAL RELATIONS

§ 5.3.1 By appropriate agreement, written where legally required for validity, the Contractor shall require each Subcontractor, to the extent of the Work to be performed by the Subcontractor, to be bound to the Contractor by terms of the Contract Documents, and to assume toward the Contractor all the obligations and responsibilities, including the responsibility for safety of the Subcontractor's Work, which the Contractor, by these Documents, assumes toward the Owner . . . .

. . . .

A-2753-23

§10.1 SAFETY PRECAUTIONS AND PROGRAMS

§10.1.1 The Contractor shall be responsible for initiating, maintaining[,] and supervising all safety precautions and programs in connection with the performance of the Contract.

§ 10.2 SAFETY OF PERSONS AND PROPERTY

§ 10.2.1 The Contractor shall take all necessary precautions for safety of, and shall provide all necessary protection to prevent damage, injury or loss to:

.1  employees on the Work and other persons who may be affected thereby;

.2  the Work and materials and equipment to be incorporated therein, whether in storage on or off the site, under care, custody[,] or control of the Contractor or the Contractor's Subcontractors . . . ; and

.3  other property at the site or adjacent thereto, such as trees, shrubs, lawns, walks, pavements, roadways, structures[,] and utilities not designated for removal, relocation[,] or replacement in the course of construction.

§ 10.2.2 The Contractor shall give notices and comply with applicable laws, ordinances, rules, regulations[,] and lawful orders of public authorities bearing on safety of persons or property or their protection from damage, injury[,] or loss.  Contractor shall provide all facilities and shall follow all procedures required by the Occupational Safety and Health Act [(OSHA)] including, without limitation, providing and posting all required posters and notices and shall otherwise be responsible for all other mandatory safety laws pertaining to the Work of this Contractor.

A-2753-23

§ 10.2.3 The Contractor shall erect and maintain, as required by existing conditions and performance of the Contract, all appropriate safeguards for safety and protection, including posting danger signs and other warnings against hazards, promulgating safety regulations[,] and notifying owners and users of adjacent sites and utilities.

§ 10.2.4 When use or storage of explosives or other hazardous materials or equipment or unusual methods are necessary for execution of the Work, the Contractor shall exercise utmost care and carry on such activities under supervision of properly qualified personnel.

§ 10.2.5 The Contractor, at its sole cost and expense, shall promptly remedy damage and loss to property referred to in Sections 10.2.1.2 and 10.2.1.3 caused in whole or in part by the Contractor, a Subcontractor, . . . or anyone directly or indirectly employed by any of them, . . . for which the Contractor is responsible under Sections 10.2.1.2 and 10.2.1.3, except damage or loss attributable to acts or omissions of the Owner . . . and not attributable to the fault or negligence of the Contractor.   The   foregoing   obligations   of   the Contractor   are   in   addition   to   the   Contractor's obligations under Section 3.18.

§ 10.2.6 The Contractor shall designate a responsible member of the Contractor's organization at the site whose duty shall be the prevention of accidents.  This person shall be the Contractor's superintendent unless otherwise designated by the Contractor in writing to the Owner . . . .

AJD subcontracted with MOS to install steel rebar for the project.  It also subcontracted with Esposito to:  perform demolition, excavation, grading,

A-2753-23

backfilling, compacting, and paving; and stabilize the construction entrance. Esposito agreed to: perform its work in a safe manner; take all necessary safety precautions; develop and implement a safety program to prevent injury to its employees and other persons at the site; abide by Owner's and Contractor's safe work practices, and all local, state, and federal laws with respect to safety and accident prevention; and provide for frequent and regular safety inspections.

AJD's contracts with MOS and Esposito contained an identical indemnification clause, which read:

> Section 10.  INDEMNIFICATION
>
> (a) To the fullest extent permitted by law, Subcontractor shall indemnify, defend and hold harmless Contractor, Owner, [and] any other person or entity required to be indemnified by Contractor under the Prime Contract, . . . from and against any and all actual, threatened or alleged claims, citations, fines, forfeitures, penalties, liens, causes of actions, suits, demands, damages, liabilities, losses, costs and expenses, including, but not limited to, attorney's fees (the "Claim") that: (i) arise from Subcontractor's breach of a term of the Contract Documents[;] (ii) are caused or alleged to have been caused by Subcontractor, a Sub-subcontractor or any person for whose acts or omissions Subcontractor or Sub-subcontractor may be responsible (including, but not limited to, violations of Owner's and Contractor's health and safety requirements); (iii) arise from, relate to or otherwise are connected with or incidental to the Work, whether or not caused or alleged to be caused in part by Owner or Contractor; or (iv) arise from actual

10

A-2753-23

or alleged contamination, pollution, or public or private nuisance, arising directly or indirectly out of this Agreement or any acts or omissions of Subcontractor, its subcontractors, including but not limited to, handling, transportation, treatment, storage or disposal of Hazardous Materials, substances, samples or residue or out of Subcontractor's failure to comply with any warranty contained in this Agreement . . . .  Nothing herein shall require Subcontractor to indemnify Contractor or Owner for claims caused by Contractor's or Owner's sole negligence. . . .

(b) Contractor, in its sole discretion, reserves the right to retain its own counsel to defend it, Owner or other indemnified parties, against a Claim covered by Section 10(a) at Subcontractor's cost and expense. Contractor's reservation of such election to defend with counsel of its own choice shall not limit Subcontractor's obligations under Section 10(a).

On November 2, 2017, Donald[1], an MOS project superintendent, stepped on a fist-sized rock while he was walking with a delivery driver on the site's single unpaved access road to determine where to offload a rebar delivery. Donald's injury required multiple back surgeries.  According to Donald, the dirt access road was used by all delivery vehicles and was "pretty chewed up," causing rocks in the ground to work their way to the surface.  "[T]he natural dirt . . . on the job had a lot of large rocks inherent in it."

---

[1]  Intending no disrespect, we refer to Donald by his first name to distinguish him from his wife, who shares his surname and is also a plaintiff.

11

A-2753-23

Plaintiffs sued defendants for negligence.  AJD demanded MOS assume its defense; and MOS declined.  AJD filed an answer, which included a cross-claim for contractual indemnification against MOS and Esposito.  MOS filed an answer denying AJD's cross-claim.

The discovery process included a deposition of a Grand LHN corporate representative.  He visited the site several times each month to:  attend twice-monthly construction meetings with AJD representatives; attend monthly meetings with construction lenders; and meet with independent consultants.  Another Grand LHN representative was on site nearly every day, and one or two owner-representatives were periodically on site.

The construction meetings were to review plans and assess the work progress, and lasted half an hour.  The corporate representative did not recall any discussion of site safety issues.  He confirmed Grand LHN relied upon AJD to keep the site safe, and AJD, not Grand LHN, controlled the site and the contractors' activities.  If he noticed an on-site hazard, he would have notified AJD.

Esposito's owner was also deposed and confirmed Esposito built the dirt access road on the site using stone for soil stabilization.  However, Esposito was only responsible for the road's subsequent maintenance at the request of AJD,

A-2753-23

and for a separate fee.  Esposito was not on-site every day.  If trucks caused ruts or more stones were needed to stabilize the road, AJD would contact Esposito to re-grade the road and add stone.  The road was the most traveled part of the site, but no one ever complained to Esposito's owner about the condition of the access road, or directed Esposito to maintain or repair it.  The stone Donald slipped on appeared to be the same size as the two-and-one-half inch rocks Esposito used to construct the site entrance.

In October 2017, Esposito dug a trench along the access road for the installation of a gas line.  On October 21, 2017, nearly two weeks before Donald's accident, Esposito restored the road by backfilling the trench and then compacting and rolling the fill.  According to Esposito's owner, this would have eliminated any loose rocks from the surface of the road.  AJD inspected Esposito's work afterwards, and never stated the road was unsafe or complained about the quality of the work.

AJD's project manager was deposed and confirmed Esposito was responsible for maintaining the access road only at the direction of AJD.  AJD controlled all activities at the site and had the ultimate responsibility for site safety.  The project manager did not think the access road could have been made safer.  He described the earth at the construction site as consisting of dirt,

13

crushed concrete, and rocks.  The rocks were "everywhere" but he did not recall any complaints about the portion of the access road where Donald fell.  When he viewed the area, he believed it was safe.

The assistant to AJD's project manager also testified and explained Esposito was only required to perform maintenance on the access road if they were asked to do so by AJD.  He explained Esposito put down stone all along the road because it became muddy and trucks were continuously using the road for deliveries.

Plaintiffs' expert opined Esposito was at fault for leaving fist-sized rocks and chunks of cement from its demolition work on the access road.  He claimed Esposito failed to properly surface and grade the access road, including after it backfilled the gas line trench.  The expert also asserted Esposito also failed to comply with the safety requirements of its subcontracting agreement and violated several OSHA regulations.

On June 19 and September 14, 2020, the trial court dismissed plaintiffs' claims against MOS, based on the workers' compensation bar.  MOS then moved for summary judgment against AJD to dismiss its cross-claim for indemnification.

14

MOS argued its indemnification agreement with AJD, to hold AJD harmless for losses or damages resulting from AJD's sole negligence, violated public policy. The indemnity language did not clearly and explicitly state it included indemnification for AJD's own negligence. Beyond contractual indemnification, MOS asserted there was no basis for common law indemnification because this type of indemnification only exists against a tortfeasor who is primarily liable for a plaintiff's injury. MOS alleged it was not liable because Esposito prepared and maintained the road where Donald fell, and he was on the road to cross the jobsite.

The first motion judge issued written findings and found there was a substantial nexus between the claim and the subject matter of the subcontractor's work duties to trigger the indemnity provision because Donald's accident happened while he was walking on the access road, performing his job to further MOS's contract with AJD. There were "facts in the record that could lead a jury to find . . . plaintiff comparatively negligent for his accident, thus triggering the indemnification clause." She denied summary judgment, reasoning "[i]ssues regarding liability are issues of material fact." The judge also denied MOS summary judgment on common law indemnification because a "jury could find

. . . AJD was free of fault in [Donald]'s accident," thereby requiring MOS to indemnify AJD.

The motion judge denied MOS's motion on November 5, 2021. She subsequently denied its motion for reconsideration for the same reasons on January 7, 2022.

Esposito moved for summary judgment dismissal of plaintiffs' claims and AJD's cross-claim for indemnification. The judge granted Esposito's motion on January 18, 2022. The same day, she also granted Grand LHN summary judgment dismissal of plaintiffs' claims.

The judge observed "AJD already admitted that its subcontract with Esposito 'did not require Esposito to maintain any of the roadways on the site . . . unless so directed by AJD.'" Therefore, plaintiffs failed to show Esposito had a duty to maintain the area. The judge found OSHA did not create a duty because "OSHA was designed for regulatory enforcement, not for independent civil remediation." Moreover, "New Jersey public policy favors the general contractor as the 'single repository of the responsibility for the safety of all employees of a job.' Kane v. Hartz Mountain Indus[.], Inc., 278 N.J. Super. 129, 141 (App. Div. 1994)." Because "AJD was the general contractor, not Esposito,"

16

A-2753-23

plaintiffs did not show "the duty to maintain belonged to Esposito, either in lieu of or in addition to AJD."

The motion judge granted Esposito summary judgment on the contractual indemnification claims asserted by AJD, finding "neither AJD nor . . . [p]laintiff[s] . . . presented facts showing negligence on the part of Esposito that would trigger the [contractual] indemnification provisions."  The judge found AJD's common law indemnification claims failed for similar reasons and "AJD ha[d] not shown that it was free of fault in the causing of the accident."  AJD's contribution claims against Esposito failed because Esposito did not breach a duty and there was "no common liability for negligence between AJD and Esposito."  The judge also dismissed AJD's breach of contract and failure to procure insurance claims because AJD did not oppose Esposito's summary judgment motion on these issues.

The motion judge issued separate written findings for Grand LHN's motion for summary judgment.  The evidence showed the rock Donald slipped on "was obvious and visible to [him] upon ordinary observation.  Further, [he] was walking upon the property to identify where deliveries should be made[, which] was incidental to the very work [Donald]'s employer was hired to perform."  As a result, Grand LHN's "duty did not extend to the elimination of

17

A-2753-23

operational hazards[,] which were obvious and visible to the invitee[,] and which are part of the work the contractor was hired to perform."

Again, the judge found OSHA was unavailing.  She noted in <u>Dawson v. Bunker Hill Plaza Associates</u>, 289 N.J. Super. 309, 321 (App. Div. 1996), we "found that while OSHA regulations require a general contractor to comply with OSHA requirements, these regulations do not apply to owners and do not impose any affirmative duty of compliance upon such owner."

Because plaintiffs did not show Grand LHN breached a duty, their negligence claims failed.  It followed that because an award of compensatory damages is a prerequisite to an award of punitive damages, Grand LHN was also granted dismissal of plaintiffs' punitive damages claims.

On December 2, 2021, plaintiffs served an offer of judgment on AJD in the amount of $2,750,000.  AJD took no action on the offer and did not consult MOS in its decision.  MOS was, however, aware of the offer.

The matter was tried before a different judge and a jury, with AJD as the sole remaining defendant.  On September 25, 2023, the jury returned a verdict against AJD and awarded plaintiffs $5,313,168.  The jury apportioned liability as eighty percent against AJD and twenty percent against Donald.

In October 2023, AJD moved for summary judgment and reconsideration, seeking contractual indemnification from MOS for its share of the damages award.  MOS cross-moved for a declaration that it had no duty to indemnify AJD because the January 18, 2022 order found the contractual indemnification claim against Esposito was not triggered.

On December 4, 2023, following oral argument, the trial judge granted AJD's motion and denied MOS's motion.  The judge pointed to the motion judge's findings in the November 5, 2021 order that indemnification would be triggered if Donald was "found to be comparatively at fault thus rendering AJD partially rather than solely liable."  She recounted how "[o]n the first day of trial[,] counsel for [MOS] stated that they would not be participating in the trial because it had already been determined that the indemnification provision was triggered."  MOS's counsel agreed "there was no factual issue as to indemnification that was left to be determined by the jury and in fact[,] no evidence regarding the indemnification provision was presented at trial."

The trial judge concluded "the issue of enforceability of the indemnification provision" was "already [] decided" by the first motion judge on November 5, 2021.  There was insufficient evidence presented to show this decision was erroneous.  "The decision with regard to Esposito was made on a

19

different basis.  It was . . . based upon the lack of a substantial nexus, not that the indemnification provision under the contract was not compliant with prevailing law . . . ."  The "substantial nexus ruling was with regard to different facts against a . . . now non-party Esposito."  The trial judge declined to modify the motion judge's ruling.  Since she found contractual indemnification, she concluded there was no need to address common law indemnification.

On December 4, 2023, the trial judge issued orders directing MOS to contractually indemnify AJD "for the entirety of the jury verdict, less the amount attributable to [Donald]'s negligence, as well as interest and attorney[']s fees and costs attributable to the defense of AJD."  The orders directed AJD to file its motion for fees and costs against MOS.  The judge also entered a "Combined Order for Judgment Upon Compensatory Damages Jury Verdict and Offer of Judgment" in favor of plaintiffs and ordered AJD to pay plaintiffs' counsel's attorney's fees and costs, pursuant to Rule 4:58-2.

As a result of the December 2023 orders, AJD moved for reimbursement of counsel fees and costs of $1,818,291.73 by MOS.  MOS cross-moved to correct the judgment, arguing it should not have to pay AJD's costs and fees resulting from AJD's rejection of plaintiffs' offer of judgment.  Even though MOS knew about the offer of judgment, it argued indemnification was not

20

A-2753-23

triggered because AJD never discussed the offer of judgment with MOS or stated it would pursue MOS for indemnification regarding the offer of judgment. The indemnification agreement also said nothing about an offer of judgment.

AJD's counsel argued they notified MOS several times during the litigation that AJD would be seeking total indemnification for its fees and costs under the contractual indemnification provision. Counsel asserted AJD could not accept or reject the offer of judgment because MOS had violated the contractual indemnification provision by not participating in the litigation. MOS had notice it would be liable to indemnify AJD prior to trial when the first motion judge made her ruling in November 2021, finding the indemnification clause would be triggered if Donald were found comparatively negligent.

Plaintiffs' counsel added MOS was aware of the situation because it was monitoring the trial. MOS was also involved in the case because plaintiffs' counsel tried to schedule mediations and MOS's counsel would not agree to it.

A second motion judge heard oral argument on the competing motions and made oral findings. He found MOS knew about the offer of judgment when it was filed on December 2, 2021. There was no dispute AJD asked MOS for contractual indemnification as early as November 14, 2019. However, the judge found an "offer of judgment is not contractual indemnification" because it was

A-2753-23

not in the contract.    Therefore, AJD was not entitled to contractual indemnification.

The judge observed "[t]here's no question . . . plaintiff[s are] entitled to . . . recover the <u>sanctions</u> due to the non-acceptance of . . . plaintiff[s'] offer of judgment from . . . AJD."  (Emphasis added).  However, AJD "cannot pursue contractual indemnification [be]cause the offer of judgment issued clearly could not have been contemplated by the parties when they entered into that contract and is not specifically addressed in the contract."  The judge noted because the contract was drafted by AJD, any ambiguity in it would be construed against it. He further found <u>Rule</u> 4:58-2 "does not address indemnification in any way whatsoever."

The judge found, even though MOS knew about the offer of judgment in December 2021, "[t]here was no communication between AJD and [MOS] . . . specifically regarding[] the offer of judgment[,] certainly within the [ninety] days required by the [<u>Rule</u>].  The decision to reject the offer of judgment was made by [AJD,] without input from [MOS]."  He concluded, "AJD never solicited or requested input from [MOS] as to whether the offer of judgment should or should not be accepted."  MOS was not blameless because the judge found "throughout the course of all the settlements [MOS] might have been a

22

problem, a wrench in the operations."  It also "participated in all [fourteen] days of the trial."

On April 5, 2024, the second motion judge entered an order requiring AJD to pay plaintiffs' counsel fees and costs of $1,818,291.73.  On June 25, 2024, the judge entered final judgment directing MOS to pay AJD $5,691,072.16, comprised of $5,157,247.59 on the molded verdict and $533,824.57 in attorney's fees and costs.

I.

Our review of a summary judgment order is de novo and governed by the same standard as the trial court.  Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 224 N.J. 189, 199 (2016).  Summary judgment must be granted "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law."  R. 4:46-2(c).  If there is no genuine issue of fact, we then decide whether the trial court's ruling on the law was correct.  Walker v. Atl. Chrysler Plymouth, 216 N.J. Super. 255, 258 (App. Div. 1987).

A-2753-23

The well-known legal standard for a negligence claim requires a plaintiff demonstrate:  "(1) a duty of care, (2) a breach of that duty, (3) proximate cause, and (4) actual damages."  Townsend v. Pierre, 221 N.J. 36, 51 (2015) (quoting Polzo v. Cnty. of Essex, 196 N.J. 569, 584 (2008)).  "To render a [defendant] liable [for negligence,] there must be found a breach of a duty, which duty, if observed, would have averted the plaintiff's injuries."  Fortugno Realty Co. v. Schiavone-Bonomo Corp., 39 N.J. 382, 393 (1963).

A.

In A-3553-23, plaintiffs argue it was error to grant Grand LHN summary judgment because it had a non-delegable duty to protect Donald from the concrete on the roadway.  Grand LHN was not relieved of its responsibility because MOS did not create the dangerous condition causing Donald's injury.  MOS was not hired to construct or maintain the road, and Donald's use of the road did not trigger the contractor's hazard exception.  Even if the exception applied, Grand LHN was not entitled to summary judgment because it violated Jersey City Construction Safety Ordinance 08-100, which required it to manage safety and enforce OSHA standards.  Plaintiffs also claim the court erred when it relied upon Mavrikidis v. Petullo, 153 N.J. 117 (1998), because they never asserted Grand LHN was vicariously liable for AJD's or Esposito's negligence.

24

A-2753-23

"As a general rule, a landowner has a non-delegable duty to use reasonable care to protect invitees against known or reasonably discoverable dangers." Dawson, 289 N.J. Super. at 317-18 (quoting Kane, 278 N.J. Super. at 140). The

> duty to provide a reasonably safe place to work is relative to the nature of the invited endeavor and does not entail the elimination of operational hazards which are obvious and visible to the invitee upon ordinary observation and which are part of or incidental to the very work the contractor was hired to perform.
>
> [Id. at 318 (quoting Sanna v. Nat'l Sponge Co., 209 N.J. Super. 60, 67 (App. Div. 1986)); see Muhammad v. N.J. Transit, 176 N.J. 185, 198 (2003).]

A landowner can assume the independent contractor and its employees possess the skills to recognize the dangers associated with their work and calibrate their methods to ensure their safety. Ibid.

Although Donald was not hired to build or maintain the access road, the record reflects part of his job involved assisting delivery drivers in situating their trucks on the access road to facilitate offloading the rebar needed for MOS's work. There was only one access road and Donald admitted he necessarily traversed it frequently in his supervisory capacity. Donald also acknowledged he was aware the access road's soil was rocky, and that weather and heavy traffic brought rocks to the surface. Thus, the operational hazard created by the rocks in and on the access road was obvious and visible to Donald, upon ordinary

25

A-2753-23

observation and incidental to his supervisory duties. Summary judgment in Grand LHN's favor was properly granted because it was not required to eliminate this operational hazard and could reasonably assume Donald was sufficiently skilled to recognize the hazard and ensure his own safety.

Also, we are unpersuaded the alleged ordinance or OSHA violations imposed liability on Grand LHN and affirm substantially for the reasons expressed in the first motion judge's written opinion dated January 18, 2022. We add the following comments.

"The absence of any OSHA regulation imposing a specific affirmative duty on the property owner is sufficient to warrant the grant of summary judgment to" the landowner. Izzo v. Linpro Co., 278 N.J. Super. 550, 556 (App. Div. 1995); accord Dawson, 289 N.J. Super. at 321. Plaintiffs concede OSHA does not impose any affirmative duties on a property owner. They nonetheless assert Grand LHN was obligated to enforce compliance with OSHA regulations and maintain a safe project because the Jersey City Construction Site Safety Manual, as adopted by Jersey City Safety Ordinance 08-100, states the "owner shall at all times be responsible for the safe construction or demolition of his/her building." This argument is unconvincing because the ordinance specifies the mechanism for imposing liability is that the Jersey City Construction Official

may enforce compliance with the manual by "issuing complaint/summonses" and imposing fines.

Indeed, OSHA "view[s] regulatory enforcement, and not independent civil remedial action, as the central means to achieve workplace safety." Alloway v. Bradlees, Inc., 157 N.J. 221, 235 (1999). While "OSHA regulations are pertinent in determining the nature and extent of any duty of care," id. at 236, "a violation of such a standard is no more than evidence of negligence." Fernandes v. DAR Dev. Corp., 222 N.J. 390, 406 (2015). "[T]he violation of OSHA regulations without more does not constitute the basis for an independent or direct tort remedy." Alloway, 157 N.J. at 236; see also Kane, 278 N.J. Super. at 144 ("the finding of an OSHA violation . . . does not constitute negligence per se").

## B.

Plaintiffs also challenge the grant of summary judgment to Esposito. They claim: the access road was unsafe as built and after it was restored following the trench work; there were material issues of fact about whether Donald fell on a piece of crushed concrete left from Esposito's demolition operations; their expert extensively detailed Esposito's failure to make the access road safe; and the violation of OSHA standards was relevant to establishing liability.

A-2753-23

Again, we affirm for the reasons expressed in the first motion judge's January 18, 2022 written opinion.  We add the following comments.  Plaintiffs were not entitled to summary judgment against Esposito because:  the record lacks evidence of the condition of the access road immediately after the trench was backfilled and the surface rolled by Esposito; AJD admitted it was ultimately responsible for assessing the quality of Esposito's work; it further admitted Esposito was not required to perform any subsequent maintenance, including rectifying problems with the access road, unless AJD expressly asked them to do so; and the expert's reliance on OSHA regulations to establish liability is unavailing for the reasons we discussed in the preceding section.

C.

In A-3782-23, MOS argues the trial court erred when it found MOS was contractually required to indemnify AJD for the eighty percent share of the damages award.  It asserts reversal is required given the conflicting indemnification ruling regarding Esposito.  By dismissing Esposito from the case, the trial court ruled the indemnification provision was ambiguous and did not entitle AJD to indemnification for its own negligence.

According to MOS, the indemnification provision is also ambiguous because only one of its five subsections, subsection iii, contains language

28

referencing AJD's own negligence.    Subsection iii merely provides indemnification for claims, which "arise from, relate to or otherwise are connected with or incidental to the Work, whether or not caused or alleged to be caused in part by Owner or Contractor."  MOS claims this language does not expressly and unequivocally state AJD was entitled to indemnification for its own negligence.  The court should have construed the provision against AJD because it drafted it.

MOS asserts the indemnification provision was not triggered because there was no nexus between Donald's work and the accident since Donald was simply walking on the job site when he fell.  The indemnification provision would have only been triggered if Donald was installing or overseeing the installation of rebar when he fell.

Appellate review of a trial court's interpretation of a contract is de novo. Kieffer v. Best Buy, 205 N.J. 213, 222-23 (2011).  We owe no deference to the "trial court's interpretation of the law and the legal consequences that flow from established facts."  Manalapan Realty L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995).

Our Supreme Court recently stated:

> To review an indemnity provision in a contract, we strive for the same goal as we do in reviewing any

contractual provision – discerning the intent of the parties.  See Kieffer, 205 N.J. at 223.  "The judicial task is simply interpretative; it is not to rewrite a contract for the parties better than or different from the one they wrote for themselves."  Ibid.  The terms used in the contract are given their plain and ordinary meaning, and "[i]f an indemnity provision is unambiguous, then the words presumably will reflect the parties' expectations."  Ibid.

Indemnity provisions, however, differ from other contractual provisions in one important respect:  when the meaning of the clause is ambiguous, an indemnification provision will be "strictly construed against the indemnitee."  Id. at 223-24 (quoting Mantilla v. NC Mall Assocs., 167 N.J. 262, 272 (2001)).

[Boyle v. Huff, 257 N.J. 468, 478 (2024) (alteration in original).]

Where the terms of an indemnity provision are unambiguous, "the parties' agreement 'will be enforced as written when its terms are clear in order that the expectations of the parties will be fulfilled.'"  Mem'l Props., LLC v. Zurich Am. Ins. Co., 210 N.J. 512, 525 (2012) (quoting Flomerfelt v. Cardiello, 202 N.J. 432, 441 (2010)).  "Thus, a contract will not be construed to indemnify the indemnitee against losses resulting from its own negligence unless such an intention is expressed in unequivocal terms."  Ramos v. Browning Ferris Indus. of S. Jersey, Inc., 103 N.J. 177, 191-92 (1986).

A-2753-23

We reject MOS's argument the dismissal of Esposito should also have resulted in MOS's dismissal from the case. Esposito was dismissed because it had no duty to indemnify AJD since Esposito owed no duty to Donald, was not responsible for his accident, and indemnification would only be triggered if Esposito shared in the liability with AJD. The denial of summary judgment to MOS did not conflict with the Esposito ruling because there was evidence supporting a finding Donald's own negligence contributed to his accident. This negligence would be attributable to MOS because it arose from, related to, or otherwise was connected with or incidental to the rebar work.

MOS's attack on the indemnification language as ambiguous is unpersuasive. The plain language of the indemnification provision reads as follows:

> (a) To the fullest extent permitted by law, Subcontractor shall indemnify, defend and hold harmless Contractor, Owner, any other person or entity required to be indemnified by Contractor under the Prime Contract . . . from and against any and all actual, threatened or alleged claims, . . . fines, . . . penalties, . . . causes of actions, suits, demands, damages, liabilities, losses, costs and expenses, including, but not limited to attorney's fees (the "Claim") that: (i) arise from Subcontractor's breach of a term of the Contract Documents, (ii) are caused or alleged to have been caused by Subcontractor . . . or any person for whose acts or omission Subcontractor . . . may be responsible (including, but not limited to, violations of Owner's and

31

A-2753-23

Contractor's health and safety requirements); <u>(iii) arise from, relate to or otherwise are connected with or incidental to the Work, whether or not caused or alleged to be caused in part by Owner or Contractor;</u> or (iv) arise from actual or alleged contamination, pollution, or public or private nuisance, arising directly or indirectly out of this Agreement or any acts or omissions of Subcontractor, its subcontractors, including but not limited to, handling, transportation, treatment, storage or disposal of Hazardous Materials, substances, samples or residue or out of Subcontractor's failure to comply with any warranty contained in this Agreement . . . .    Nothing herein shall require Subcontractor to indemnify Contractor or Owner for claims caused by Contractor's or Owner's sole negligence. . . .

The five subsections of the indemnification provision were not written in the conjunctive form, but instead stood separately in the disjunctive separated by an "or."  There is nothing confusing or ambiguous about one subsection discussing indemnification and referencing the contractor or owner's negligence while the remaining subsections discuss the subcontractor's acts or omissions.

The language of subsection iii is not ambiguous.  We have previously construed the same "whether or not caused in part by the indemnitee" language as allowing for indemnification for the indemnitee's own negligence.  <u>See</u> <u>Andalora v. R.D. Mech. Corp.</u>, 448 N.J. Super. 229, 232 (App. Div. 2017); <u>Est. of D'Avila v. Hugo Neu Schnitzer E.</u>, 442 N.J. Super. 80, 114-15 (App. Div. 2015).

A-2753-23

We are also unpersuaded by MOS's argument regarding the alleged required "nexus" between Donald's accident and his work.  Donald testified in deposition his work duties included overseeing his work crews and facilitating deliveries, which necessarily entailed walking back and forth on the single access road.  When his accident occurred, he was walking with a delivery driver to find the best place on the access road to situate a delivery truck for offloading.  Donald's fall occurred during the performance of his duties, in furtherance of the work being performed by MOS at the site.  No greater nexus was required.  See Leitao v. Damon G. Douglas Co., 301 N.J. Super. 187, 193 (App. Div. 1997) (in the indemnification context, a claim "arising out of or resulting from the subcontractor's work" is construed as referring to a claim "growing out of" or having its "origin in" the subject matter of the parties' underlying agreement).

## II.

In A-2753-23, AJD argues the second motion judge erred when he concluded it was not entitled to indemnification by MOS for the penalties it was ordered to pay to plaintiffs for not accepting plaintiffs' offer of judgment.  Contrary to the judge's findings, AJD asserts the language of the indemnification provision, requiring indemnification for "any and all . . . fines, . . . penalties, . . .

A-2753-23

damages, liabilities, losses, costs and expenses, including . . . attorney's fees," included the offer of judgment penalties.

Rule 4:58-2(a) states

> if the offer of a claimant is not accepted and the claimant obtains a money judgment, in an amount that is 120% of the offer or more, excluding allowable prejudgment interest and counsel fees, the claimant shall be allowed, in addition to costs of suit: (1) all reasonable litigation expenses incurred following non-acceptance; (2) prejudgment interest of eight percent on the amount of any money recovery from the date of the offer or the date of completion of discovery, whichever is later, but only to the extent that such prejudgment interest exceeds the interest prescribed by [Rule] 4:42-11(b), which also shall be allowable; and (3) a reasonable attorney's fee for such subsequent services as are compelled by the non-acceptance.

The purpose of the Rule is to induce settlement. Willner v. Vertical Reality, Inc., 235 N.J. 65, 81 (2018).

Again, as with all contracts, our review of an indemnification agreement is de novo. Boyle, 257 N.J. at 477. The "phrase 'any and all' allows for no exception" with respect to "those types of things thereafter mentioned." Isetts v. Borough of Roseland, 364 N.J. Super. 247, 256 (App. Div. 2003); accord Nesby v. Fleurmond, 461 N.J. Super. 432, 439 (App. Div. 2019). "The word 'any' clearly may and should be interpreted as meaning 'all or every.'" Atl. Cas. Ins. Co. v. Interstate Ins. Co., 28 N.J. Super. 81, 91 (App. Div. 1953).

The parties' indemnification provision required indemnification for "any and all . . . penalties, . . . costs and expenses, including . . . attorney's fees."  This language readily encapsulated the liability imposed upon AJD under Rule 4:58-2(a).  The second motion judge even referred to the sums sought for refusal to accept the offer of judgment as a penalty.  For these reasons, we conclude his interpretation of the indemnification agreement as either not contemplating an offer of judgment, or requiring the parties to draft a specific provision relating to the consequences of not accepting an offer of judgment, was error.  Paragraph two of the April 5, 2024 order is reversed and remanded for entry of an order requiring MOS to indemnify AJD for the consequences of not accepting plaintiffs' offer of judgment.

III.

Finally, to the extent we have not addressed other arguments raised in these three appeals, it is because they lack sufficient merit to warrant discussion in a written opinion.  R. 2:11-3(e)(1)(E).

Affirmed in A-3553-23 and A-3782-23.  Reversed and remanded in A-2753-23 for entry of an order consistent with this opinion.  We do not retain jurisdiction.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

*M.C. Harley*

Clerk of the Appellate Division

A-2753-23